IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| MARIAH V.A., | CV 22–119–M–DWM |
| Plaintiff, | |
| v. | OPINION and ORDER |
| KILOLO KIJAKAZI, ACTING COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

Plaintiff brought this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security denying her application for disability insurance benefits under Title II of the Social Security Act and her application for Supplemental Social Security Income disability benefits under Title XVI of the Social Security Act. 42 U.S.C. §§ 401–33. For the reasons stated below, the Commissioner's denial of benefits is reversed and remanded for an immediate award of benefits.

## LEGAL STANDARD

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of Social Security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record. *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017). "Substantial evidence means more than a mere scintilla,

1

but less than a preponderance." *Id.* (internal quotation marks omitted).  It is "such

relevant evidence as a reasonable mind might accept as adequate to support a

conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotation

marks omitted).  "If the evidence can reasonably support either affirming or

reversing," the reviewing court "may not substitute its judgment" for that of the

Commissioner. *Reddick v. Chater*, 157 F.3d 715, 720–21 (9th Cir. 1998).  And,

even if an ALJ errs, the decision will be affirmed where such error is harmless; that

is, if it is "inconsequential to the ultimate nondisability determination," or if "the

agency's path may reasonably be discerned, even if the agency explains its

decision with less than ideal clarity." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492

(9th Cir. 2015) (as amended) (internal quotation marks omitted).

A disability claimant benefits bears the burden of proving that disability

exists.  42 U.S.C. § 423(d)(5).  Disability is the "inability to engage in any

substantial gainful activity by reason of any medically determinable physical or

mental impairment which can be expected to result in death or which has lasted or

can be expected to last for a continuous period of not less than 12 months[.]"  42

U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A claimant is disabled only if her

impairments are of such severity that she is unable to do her previous work and

cannot, considering her age, education, and work experience, engage in any other

substantial gainful activity in the national economy.  42 U.S.C. §§ 423(d)(2)(A),

1382c(a)(3)(B); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

In determining disability, the ALJ follows a five-step sequential evaluation process. *Tackett*, 180 F.3d at 1098; 20 C.F.R. § 404.1520(a)(4)(i)-(v). The process begins, at the first and second steps, "by asking whether a claimant is engaged in 'substantial gainful activity' and considering the severity of the claimant's impairments." *Kennedy v. Colvin*, 738 F.3d 1172, 1175 (9th Cir. 2013). "If the inquiry continues beyond the second step, the third step asks whether the claimant's impairment or combination of impairments meets or equals a listing under 20 C.F.R. pt. 404, subpt. P, app. 1 and meets the duration requirement." *Id.* "If the process continues beyond the third step, the fourth and fifth steps consider the claimant's 'residual functioning capacity' in determining whether the claimant can still do past relevant work or make an adjustment to other work." *Id.* At step five, the burden shifts to the Commissioner. *Tackett*, 180 F.3d at 1099. "If a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps." *Id.* at 1098.

BACKGROUND

On February 20, 2017, Plaintiff filed an application for disability insurance benefits and for Supplemental Social Security Income disability benefits. AR 21. In both applications, she alleged disability beginning December 1, 2015. *See* AR 53 (onset date amended at hearing). Her claims were initially denied on September

28, 2017, AR 140–42, and upon reconsideration on April 28, 2018, AR 148–53.

Plaintiff filed a written request for hearing, AR 156–57, which was held on August

13, 2019 by Administrative Law Judge ("ALJ") Michele M. Kelley, *see* AR 47–75.

Plaintiff testified, as did vocational expert Karen Black. *See id.* Plaintiff was

represented by counsel. *Id.*

On September 25, 2019, the ALJ issued a decision denying benefits. AR

21–38. At step one, the ALJ found Plaintiff had not engaged in substantial gainful

activity since her onset date. AR 24. At step two, the ALJ found Plaintiff had the

following severe impairments: degenerative disc disease of the lumbar spine,

neuropathy, endometriosis, major depressive disorder, generalized anxiety

disorder, borderline personality disorder, obsessive-compulsive disorder ("OCD"),

and posttraumatic stress disorder ("PTSD"). AR 24. At step three, the ALJ found

Plaintiff did not meet or equal the requirements of a listed impairment. AR 25.

At step four, the ALJ determined Plaintiff had a residual functioning capacity

("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b), 416.967(b),

meaning Plaintiff

> could lift, carry, push, and pull 20 pounds occasionally and 10 pounds
> frequently. The claimant can stand and walk for two hours out of an
> eight-hour day and sit for six hours out of an eight-hour day. The
> claimant should avoid concentrated exposure to vibrations, fumes,
> odors, dusts, gases, poor ventilation, and hazards, including
> unprotected heights and dangerous machinery. The claimant should
> avoid concentrated exposure to noise greater than three out of five on
> the scale set forth in the SCO [Selected Characteristics of Occupations].

4

> The claimant can understand, remember, and carry out simple tasks. The claimant can maintain attention, concentration, persistence, and pace for such tasks for an eight-hour workday and 40-hour workweek. The claimant can tolerate only occasional interaction with supervisors, co-workers, and the public.  The claimant can tolerate usual simple work situations and can tolerate only occasional changes in routine work settings.  The claimant should have the option to wear shaded lenses and/or a hat or visor.

AR 28.  While the ALJ found Plaintiff was not able to perform her past relevant work, AR 36, the ALJ also found that Plaintiff could perform work existing in significant numbers in the national economy at step five, AR 37.  Specifically, the ALJ noted the following positions identified by the vocational expert: office helper, final assembler, and document preparer.  AR 37.

On June 18, 2020, the Appeals Council denied Plaintiff's request for review, AR 3–5, and on August 13, 2020, Plaintiff appealed that decision to this Court, *see* AR 1685–88.  On April 28, 2021, this Court remanded Plaintiff's case back to the agency, finding that the ALJ's reasons for discounting Plaintiff's mental health treatment providers' assessments of her work-related functionality were not supported by substantial evidence and that the ALJ failed to consider Plaintiff's treatment needs in assessing her RFC.  *See* AR 1700–21; *see also* AR 1724.  A telephonic remand hearing was held on January 27, 2022 before the same ALJ. *See* AR 1594–636.  Plaintiff testified,[1] AR 1602–26, as did vocational expert Kent

---

[1] At the January 2022 hearing, Plaintiff asked for more time to present testimony. *See* AR 1626.  At the end of the hearing, however, the ALJ agreed to accept a

Granat, AR 1626–31.  Plaintiff was represented by counsel.  AR 1597.

On March 15, 2022, the ALJ once again denied Plaintiff's request for benefits.  *See* AR 1567–85.  At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since her original onset date of December 1, 2015.  AR 1569.  At step two, the ALJ found the severe impairments of: endometriosis with bowel adhesions, degenerative disc disease of the spine, degenerative joint disease of the left knee, migraines, bipolar disorder, depressive disorder, PTSD, OCD, generalized anxiety disorder, panic disorder, personality disorder, polysubstance use disorder, tenosynovitis of the right wrist (acute triangular fibrocartilage complex injury), and right rotator cuff tear (post arthroscopic repair in October 2020).  AR 1569–70.  The ALJ determined the following impairments were not severe: eye discharge, herpes, asthma, tendinosis of the bilateral ankles, and asthma/seasonal allergies.  AR 1570.  At step three, the ALJ found Plaintiff did not meet or equal the requirements of a listed impairment. AR 1571–73.

At step four, the ALJ determined that Plaintiff once again had an RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b), 416.967(b).  The only substantive change in the RFC following remand is the addition of a finding that

---

written statement in lieu of further testimony.  *See* AR 1633–34.  That statement is included in the record as Exhibit 28E.  *See* AR 1911–12.

Plaintiff can "occasionally climb ramps and stairs" and references to normal work breaks: "the claimant could lift, carry, push, and pull 10 pounds frequently and 20 pounds occasionally; stand and/or walk for about two hours in an eight-hour workday *with normal work breaks*; sit for about six hours in an eight-hour workday *with normal work breaks (normal work breaks are defined as breaks occurring every two hours, with two breaks lasting at least 10 minutes and one break lasting at least 30 minutes)*." AR 1574 (additional finding language italicized). Once again, while the ALJ found Plaintiff was not able to perform her past relevant work, AR 1583, the ALJ found that Plaintiff could perform work existing in significant numbers in the national economy at step five, AR 1584–85. Specifically, the ALJ noted the following positions identified by the vocational expert: electronic inspector, electrode cleaner, and touch-up inspector. AR 1584.

On July 7, 2022, Plaintiff once again appealed to this Court. (Doc. 1.) The Commissioner filed the Administrative Record on September 9, 2022, (Doc. 5), and Plaintiff filed her opening brief on November 21, 2022, (Doc. 9). The matter was fully briefed on January 17, 2023. (*See* Docs. 13, 14.)

## ANALYSIS

Plaintiff argues that the ALJ ignored this Court's previous remand order and the evidentiary requirements in denying benefits. Specifically, Plaintiffs argues that the ALJ: (1) improperly discounted the findings and opinions of Plaintiff's

mental healthcare providers Dr. Michael Thein and Nathan Hoyme, LCSW;
(2) failed to review the amount of time needed for medical care and treatment; and
(3) failed to incorporate Plaintiff's impairments into the hypothetical questions
posed to the vocational expert. As a result, Plaintiff insists that the ALJ adopted an
RFC that is not supported by substantial evidence and ignores the vocational
testimony in the record. In response, the Commissioner argues that substantial
evidence supports the ALJ's conclusions as to Plaintiff's subjective symptoms and
the ALJ's evaluation of the medical source opinions. Finally, the Commissioner
argues that while the ALJ did not discuss treatment in terms of the number of
appointments, Plaintiff presents no evidence that her treatment would necessarily
interfere with her ability to work. Ultimately, Plaintiff prevails and the matter is
remanded for an immediate award of benefits.

## I.    Medical Source Opinions

Plaintiff first argues that the ALJ provided no additional explanation for her
rejection of the opinions of Plaintiff's mental health treatment providers, Dr. Thein
and Mr. Hoyme. Plaintiff further argues that the ALJ improperly "cherry-picked"
positive mental health reports. The Commissioner disagrees, insisting that the ALJ
adequately explained how the severity of Dr. Thein and Mr. Hoyme's opinions
stands at odds with the objective findings in the record. Plaintiff has the better
argument.

## A.    Standard

In assessing disability, an ALJ may rely on the opinions of three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non-examining physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Under the "treating physician rule,"[2] the ALJ is required to give deference to the treating physician as follows:

> As a general rule, a treating physician's opinion is entitled to substantial weight. Nevertheless, the ALJ need not accept the opinion of a treating physician. If a treating physician's opinion is not contradicted by other evidence in the record, the ALJ may reject it only for clear and convincing reasons supported by substantial evidence in the record. But if the treating doctor's opinion is contradicted by another doctor, the ALJ may discount the treating physician's opinion by giving specific and legitimate reasons that are supported by substantial evidence in the record. The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.

*Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020) (internal quotation marks, alterations, and citations omitted). On the other hand, the ALJ need only provide germane reasons for discounting opinions from non-medical sources. *See Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

## B.    Original Record

---

[2] The 2017 regulations eliminate the deference given to treating physicians for claims filed after March 27, 2017. *See* 20 C.F.R. § 416.920c(a).

As part of her disability claim, Plaintiff was assessed by state examiners in both 2017 and 2018, first by Timothy Schofield, MD, AR 85–89, and Marsha McFarland, PhD, AR 79–84, in September 2017, and then by Carlos Jusino-Berrios, MD, AR 101–13, and Jose Rabelo, MD, AR 114–19, in April 2018. Both evaluations concluded that while Plaintiff had mild limitations in her work-related abilities, she had an RFC for sedentary unskilled work and was therefore not disabled. *See, e.g.*, AR 122.

In response, Plaintiff got Medical Source Statements regarding her mental ability to perform work-related activities from Dr. Thein, *see* AR 1509–11, and Mr. Hoyme, *see* AR 1533–35. The assessments conclude that Plaintiff's mental limitations effectively prevent her from being able to work. Although the ALJ gave some weight to Dr. Thein and Mr. Hoyme's opinions and observations elsewhere in the record, she gave little weight to these assessments, primarily on the ground that their conclusions about Plaintiff's work functionality were not consistent with the evidence in the record, either medical or otherwise. Because the opinions are contradicted by the state examiners, the ALJ was required to give "specific and legitimate reasons that are supported by substantial evidence in the record" for rejecting Dr. Thein's, *Ford*, 950 F.3d at 1154, and "germane" reasons for rejecting Mr. Hoyme's, *Molina*, 674 F.3d at 1111.

In his July 2019 Assessment, Dr. Thein opined that Plaintiff was "seriously

limited" or had "no useful ability to function" in nearly all areas of the mental

abilities and aptitudes needed to do unskilled, semi-skilled, and skilled work,

including interacting with others, and would miss more than four days of work per

month.  *See* AR 1509–11.  This Court found that substantial evidence did not

support the specific reasons the ALJ gave for rejecting Dr. Thein's assessment of

Plaintiff's mental functionality.  *See* AR 1707–11.  More specifically, the record

revealed that while some of Plaintiff's symptoms came and went (panic attacks,

trouble sleeping, low energy), other symptoms have consistently persisted

(depression, anxiety).  *See* AR 1711; *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th

Cir. 2014) (concluding it was error for an ALJ "to reject a claimant's testimony

merely because symptoms wax and wane in the course of treatment").

Additionally, many instances of improvement cited by the ALJ merely regarded

Plaintiff's mood or general affect, not her ability to work.  *See* AR 1710.  This

Court further found that the ALJ improperly rejected Mr. Hoyme's assessment for

similar reasons.  *See* AR 1711–12.

## C.    Record Following Remand

According to Plaintiff, the only change in the ALJ's decision following

remand is the addition of a summary of mental health visits from August 2019 to

September 2021.  With limited exception,[3] Plaintiff's assessment is correct.  The

_____

[3] The ALJ's 2022 decision also added reference to: a "successful arthroscopic

ALJ added the following language in support of her decision to give little weight to both Dr. Thein and Mr. Hoyme's opinions:

> Thereafter, during routine medication management visits with Dr. Thein from August 2019 through September 2021, the claimant had mostly normal mental status examinations except for observations of abnormal mood and affect (Exh. 31F/2, 5, 8, 10, 12, 14, 16, 18, 20, 22, 24, 26, 29, 32, 35, 38, 42, 45, 48, 51, 54, 57, 60, 64, 66, 69, 72, 74, 77, 80, 83, 86, 89).   Furthermore, the recent medication management records contain statements from the claimant and Dr. Thein that illustrate improved and stable mental health symptoms under conservative care.   In March 2021, the claimant reported that her depression was not too bad and that her mood felt stable too, and one month later, Dr. Thein noted that gabapentin seemed to be helping her anxiety (Exh. 31F/19, 21).   More recent, in May 2021, the claimant reported that her depression and moods were more stable, and Dr. Thein noted that the claimant's PTSD was mostly in remission (Exh. 31F/17). Furthermore, the claimant received no specific treatment for OCD or polysubstance use.

*See* AR 1578, 1579–80, 1580–81, 1582, 1583.  As it relates to Mr. Hoyme, the ALJ further noted that "claimant's activities are not fully consistent with Mr. Hoyme's opinions."  AR 1580–81.  This additional analysis is insufficient to cure the deficiencies of the previous remand.

As shown above, the ALJ did not revisit her prior rejection of Dr. Thein or Mr. Hoyme's opinions or the basis for them; rather, the ALJ supplemented her explanation with a discussion of Plaintiff's more recent mental health records.

---

repair of the right shoulder" in October 2020, *see* AR 1576–77,  normal neurology examinations in 2019 and 2020, *see* AR 1576, 1577, 1581, 1582, and the fact that Plaintiff "is the driver for her boyfriend who cannot drive," AR 1579.

That is problematic for three reasons.  First, this Court previously found that the ALJ's analysis was deficient based on records that existed in 2019.  It was therefore those records and that early analysis that the ALJ was required to revisit. The ALJ did not do so.  Second, this supplemental summary once again improperly focuses on snapshots of mental improvement to find functionality.  *See Garrison*, 759 F.3d at 1017.  Although the ALJ's updated review of Plaintiff's mental health visits is accurate, it is not complete.  To be sure, a May 2021 record indicates a stable mood and states that "currently her PTSD is mostly in remission."  *See* AR 2021–22.  Nevertheless, by June 2021, her PTSD had "kindled up," AR 2019, and in July she was having panic attacks again, AR 2017.  In August, Plaintiff was "doing OK" again, AR 2015, 2013, but by September her anxiety is described as "through the roof" and her PTSD remains "debilitating," AR 2010.  And that downward spiral continued through at least October.  *See* AR 2007.  Even though Plaintiff's symptoms occasionally abate, her records show a lack of consistent functionality.  Thus, the record does not support the ALJ's assertion that Plaintiff's mental health has stabilized so as to undermine the functionality assessments of Dr. Thein and Mr. Hoyme.

Finally, even assuming the ALJ's selections of Plaintiff's mental health performance were representative, that analysis only demonstrates Plaintiff's mental functionality since 2019; it says nothing about her ability to work prior to that date.

*See Smith v. Kijakazi*, 14 F.4th 1108, 1113 (9th Cir. 2021) (holding that the ALJ erred when he disregarded all of a claimant's testimony without considering the progression of the claimant's symptoms over time). To the contrary, marked improvement from 2019 to 2021 would indicate a disabling mental health condition prior to that time frame. *See id.* at 1113–14 ("The record evidence reflects that, over time, Smith moved from a state where he appears to have been unable to engage in meaningful work to a state in which he was significantly less hindered. Therefore, it may be that Smith was disabled for a qualifying portion of the time from his alleged onset date, even if not for the full period."). As Plaintiff argues, during her worst periods the record evidence regarding her daily activities neither contradicts her testimony nor meets the threshold for full-time work.

Ultimately, the ALJ did not address the errors previously identified by the Court and fails to provide "specific and legitimate reasons that are supported by substantial evidence in the record" for rejecting Dr. Thein's opinions, *Ford*, 950 F.3d at 1154, and "germane reasons" for rejecting Mr. Hoyme's opinions, *Molina*, 674 F.3d at 1111. As it relates to Mr. Hoyme specifically, he has been treating Plaintiff for almost a decade. He opined that Plaintiff's "anxiety-, depressive-, and posttraumatic stress-related symptomology have escalated to a debilitating degree, rendering her incapacitated in most, if not all, public, social and workplace settings." AR 1534. Plaintiff's reported activities are not in tension with this

conclusion. To the contrary, her more recent mental health records with Dr. Thein indicate that she continues to lock herself in her home and have very little social interaction. *See* AR 2010 (September 2021). There is no evidence in the record that Plaintiff engages in any activities that require much, if any, socializing outside the home.

## II.    Treatment

But even if the ALJ's skepticism of the seriousness of Plaintiff's mental impairments was supported by the record, the critical question in this case is the ALJ's assessment of Plaintiff's treatment needs. In this Court's April 2021 Order, it found that the ALJ failed to consider the frequency and duration of Plaintiff's treatment in assessing her RFC. *See* AR 1704, 1719. Plaintiff argues that the ALJ did not do so on remand. The government concedes that the ALJ did not specifically address the time spent on appointments, but argues that the ALJ adequately considered the entire record in assessing Plaintiff's RFC. Plaintiff once again has the better argument.

Social Security Rule 96-8p, or SSR 96-8p,[4] requires that the frequency and

---

[4] Although Social Security Rulings do not have the same force and effect as the statute or regulations, they are binding on all components of the Social Security Administration and are to be relied upon as precedents in adjudicating cases. 20 C.F.R. § 402.35(b)(1); *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1224 (9th Cir. 2009) ("[Social Security Rulings] do not carry the 'force of law,' but they are binding on ALJs nonetheless.").

duration of treatment be incorporated into the RFC of a claimant. 61 F. Reg. 34474, 34477 (July 2, 1996). "An ALJ's failure to consider the effect of a claimant's treatment needs constitutes reversible error." *Edmunds v. Kijakazi*, 2021 WL 4452762, at *6 (D. Mont. Sept. 29, 2021) (collecting cases). Nevertheless, the "frequency of medical appointments alone" does not render a claimant disabled. *Kim v. Saul*, 2020 WL 872308, *11 (D. Minn. Jan. 28, 2020). "But, the ALJ must still consider the effects of a claimant's treatment in conjunction with other evidence of record." *Id.* (quotation marks omitted).

Here, the vocation expert testified at the 2019 hearing that an individual that is off task 20 percent of the time could not work at any full-time employment. AR 72. And, at the 2022 hearing, the vocational expert testified that being absent from work 15 percent of the time would preclude competitive, full-time work. AR 1630. Consistently, the vocational expert opined that "[i]f a person misses more than one to two days per month on a consistent basis, that by itself takes them out of competitive employment." AR 1630–31. Much like the first time, the ALJ did not address how this conclusion dovetailed with Plaintiff's treatment needs. To be sure, the ALJ found that "the claimant's subjective complaints regarding her mental health symptoms are not consistent with the conservative treatment history, the mostly normal mental status examinations, and the statements of improved symptoms with medication alone." AR 1577. But once again, the record shows

that Plaintiff averaged the following treatment days per month each year: 2016–
2.33, 2017–3.92, 2018–3.75, and 2019–5.14.  And, both Dr. Thein and Mr. Hoyme
specifically opined that Plaintiff would be absent from work more than four days
per month due to her impairments and/or her treatment.  *See* AR 1511, 1535.

The Commissioner insists this omission is not dispositive because the ALJ
generally considered the totality of Plaintiff's circumstances and the need for
treatment is not necessarily concomitant with absenteeism.  On its face, the
Commissioner is correct.  Neither the Social Security Act nor its implementing
regulations mandate a numerical accounting of a claimant's appointments.  Nor
does the need for treatment necessarily prevent a claimant from working.  *See*
*Goodman v. Berryhill*, 741 F. App'x 530 (9th Cir. 2018); *Johnson v. Kijakazi*,
2022 WL 2953698 (9th Cir. July 26, 2022).  However, the ALJ's decision does not
show a consideration of treatment-based absenteeism in the context of this case.  In
*Goodman*, for example, "the evidence showed Goodman could work a non-
traditional work shift (nights), so any error attributable to the ALJ's failure to
discuss the effect of Goodman's frequent medical appointments on his ability to
hold a traditional day job was harmless."  741 F. App'x at 530.  Likewise, the
evidence in *Johnson* showed only nine appointments in a five-month timeframe.
2022 WL 2953698, at *2.  Here, on the other hand, there is no record evidence that
Plaintiff's treatment needs would not interfere with her ability to work.  To the

17

contrary, Plaintiff "has presented sufficient evidence to establish the possibility
that the frequency of her medical appointments may inhibit her ability to work on a
'regular and continuing basis.'" *Bourcier v. Saul*, 856 F. App'x 687, 690–91 (9th
Cir. 2021).

More specifically, the record shows upwards of fifteen doctors visits in a
single year for physical complaints as well as mental health appointments once or
twice a month.  While the Commissioner may be correct in its hypothetical
assertion that these appointments could be scheduled outside normal working
hours or Plaintiff could work a job outside normal working hours, neither
possibility was considered by the ALJ or is supported by the record.  To the
contrary, the three jobs listed in the ALJ's decision all appear to be traditional blue
collar labor positions with regular working hours. *See* AR 1584.  Nor is the
Commissioner persuasive in arguing that Plaintiff failed to carry a burden by
failing to show treatment would conflict with work.  As this Court previously
found, Plaintiff's treatment needs—in conjunction with her recognized mental
health limitations—are likely to interfere with her ability to work. *See Kim*, 2020
WL 872308, *9–11 (finding that where the objective evidence showed the plaintiff
had medical appointments on more than 50 days in a 33-month period, "the ALJ
must explain how this course of treatment is reconcilable with the vocational
expert's testimony regarding tolerated absences").  That is why the ALJ was

18

specifically required to consider this issue on remand. *See* AR 1704, 1719. The ALJ failed to do so. It is not enough for the Commissioner to now proffer arguments about treatment when the ALJ did not do so in the first instance. The ALJ's decision is therefore fatally deficient.

## III. Vocational Expert Hypotheticals

Finally, Plaintiff argues that the ALJ erred by failing to incorporate her impairments into the hypothetical questions posed to the vocational expert. "Hypothetical questions posed to the vocational expert must set out *all* the limitations and restrictions of a particular claimant." *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988). Here, the ALJ once again did not account for the time Plaintiff spends attending medical appointments in the hypothetical scenarios posed to the vocation expert. Nor did the ALJ ask the vocational expert about an individual that could work nontraditional shifts.

## IV. Remand

Based on the foregoing, remand is warranted. Such a remand can take the form of either a "remand for further proceedings or for an award of benefits." 42 U.S.C. § 405(g). Although a court should generally remand to the agency for additional investigation or explanation, a court has discretion to remand for immediate payment of benefits. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099–100 (9th Cir. 2014). But it should only do so if the record has

been fully developed and there are no outstanding issues left to be resolved.

*Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015).  In light of the previous

remand, there are no outstanding issues to be resolved, and the record shows that

Plaintiff is likely to miss multiple days of work per month due to both her mental

health issues and her treatment needs.  The vocational expert testified that a person

with Plaintiff's characteristics that would miss that much work is not employable.

A finding of disability is therefore required.  *See Brewes v. Comm'r of Soc. Sec.*

*Admin.*, 682 F.3d 1157, 1164–65 (9th Cir. 2012).

CONCLUSION

Based on the foregoing, IT IS ORDERED that Plaintiff's request for remand

is GRANTED.  The Commissioner's decision is REVERSED and this matter is

REMANDED for an immediate award of benefits from December 1, 2015.  The

Clerk of Court is directed to enter judgment consistent with this Order.

DATED this ___ day of February, 2023.

_____
Donald W. Molloy, District Judge
United States District Court